The STATE of Ohio, Appellee,

v.

GARDNER, Appellant.

[Cite as *State v. Gardner* (1998), 127 Ohio App.3d 538.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 1997CA00388.

Decided May 11, 1998.

*Douglas J. Maragas,* Canton Assistant Prosecutor, for appellee.

*Barry T. Wakser,* for appellant.

READER, Judge.

Appellant Steven Gardner and Shointa Smith have been involved in a romantic relationship and have two children.

On June 24, 1997, Zeïbbed "Zeb" Freeman picked up Shointa at her mother's residence. Shortly after she entered Zeb's vehicle, appellant approached the vehicle and tried to pull her out of the car by her hair. Shointa screamed for Zeb to pull away.

As Zeb Freeman drove away with Shointa, appellant followed in his vehicle. Appellant attempted to force the car off the road. Zeb Freeman turned and began traveling back toward Shointa's residence. Zeb attempted to enter State Route 30, but appellant blocked the entrance with his vehicle. Another vehicle struck Zeb's car from the side.

As the driver of the second vehicle appeared to be injured, Zeb began to walk to a nearby fire station for help. He turned and saw appellant inside his car, punching Shointa in the face. Her face was bruised, and her eye was red and swollen.

Appellant was charged with domestic violence in the Canton Municipal Court. The case proceeded to jury trial. Shointa Smith testified on behalf of appellant that he never struck her. Appellant was convicted as charged and sentenced to one hundred eighty days' incarceration, with ninety days suspended, and fined $100. He assigns a single error on appeal:

"The trial court erred in denying appellant's motions for a mistrial based upon prosecutorial misconduct."

Before the jury trial began, the court granted appellant's motion *in limine*, to exclude any evidence of past acts of domestic violence against Shointa Smith. Appellant argues that the prosecutor committed misconduct by persistently referring to past instances of conduct, despite the ruling on the motion *in limine*, and the court's admonishment to stay away from that line of questioning.

■ The prosecutor is not only entitled but encouraged to advocate strongly for conviction. *State v. Draughn* (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793–794. But while he may strike hard blows, the prosecutor is not at liberty to strike foul ones. *Id.*, citing *Berger v. United States* (1935), 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

■■ The prosecutor's conduct must always be judged within the context of the entire case. *Draughn*, 76 Ohio App.3d at 671, 602 N.E.2d at 793–794. The trial of the case is under the control of the trial judge, who must monitor the proceedings as they develop and control the conduct of both counsel. *Id.*

■ When misconduct occurs, the trial judge should admonish the prosecutor, and if the conduct is severe enough, admonish him within the presence of the jury. He should instruct the jury to disregard the prosecutor's statements only if requested by defense counsel. *Id.* If appellant moves for a mistrial, the court should overrule the motion only if satisfied that the conduct will not result in a miscarriage of justice, considering the curative steps taken by the court. *Id.*

■ When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to

grant a mistrial only for a gross abuse of discretion. *Id.*, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728.

Courts have been quick to label prosecutorial behavior misconduct but justify affirming the conviction on the basis that the evidence of guilt is overwhelming. *Draughn*, 76 Ohio App.3d at 672, 602 N.E.2d at 794. The incongruity of this rationale is that the better the state's case, the more leeway is given to the prosecutor to overstep. *Id.* As it is in the close case where the conduct is scrutinized more closely, a prosecutor jeopardizes his or her case by misconduct in direct proportion to its prosecutive merit. *Id.* This court has previously asserted that the consequences of misconduct should be resolved essentially without regard to the merit of the evidence, as the quality and quantity of the evidence are almost always subject to an independent assignment of error and judicial review. *Id.*

In the instant case, the transcript is fraught with instances where the prosecutor badgered witnesses, argued with the court in front of the jury, and repeatedly referred to past instances of appellant's misconduct, in direct contravention of the ruling of the court.

The following instances of misconduct occurred during the questioning of Zeb Freeman, a witness for the state:

"Q. Do you remember what street that was?

"A. I was at Cherry exit viaduct.

"Q. Okay. And I got to say, if that were me I would think that, what in the heck is going on, this crazy guy is trying to run me off the road—

"BY MR. WAKSER: Objection, Your Honor.

"BY THE COURT: That's sustained.

"* * *

"Q. You were asked a lot of questions about your relationship and Mr. Gardner's relationship with Shointa. In fact, you're aware of their relationship, aren't you?

"A. Yes.

"Q. In fact, I've instructed you not to talk about that relationship, isn't that true?

"A. Yes.

"* * *

**542**

"BY THE COURT: \* \* \* I'll sustain the objection. I'm not going to permit any other inquiry along these lines.

"\* \* \*

"Q. A box cutter. Okay. And now although I normally would never ask this question of a witness, since in fact, it was brought out on direct examination, I'm going to because they already heard part of it. Were you charged with a crime regarding this box cutter?

"BY MR. WAKSER: Objection, Your Honor.

"BY THE COURT: That's sustained.

"Q. Were you ever charged with a crime of dishonesty?

"BY THE COURT: Sus—

"BY MR. MARAGAS: I'm allowed to ask that question, Your Honor. It's Rule 609.

"BY THE COURT: Not a conviction. I'll sustain the—

"BY MR. MARAGAS: A crime of dishonesty.

"BY THE COURT: Well, for one thing there is no such crime at least in what I've seen. Are you talking about perjury?

"BY MR. MARAGAS: Well, I think, Your Honor, what I'm saying is that under Rule 609 I'm entitled to ask the witness if he's been charged with a crime of dishonesty or a felony. Especially if it's my witness.

"BY THE COURT: To bolster his—no.

"BY MR MARAGAS: Well, it's already been—

"BY THE COURT:—I'm not going to permit that, I'll sustain the objection.

"\* \* \*

"Q. You know Mr. Gardner, correct?

"A. Yes.

"Q. You know of his reputation?

"A. Yes.

"Q. Okay, would you have a reason to be in fear of Mr. Gardner?

"BY MR. WAKSER: Objection, Your Honor.

"BY THE COURT: Sustained.

"\* \* \*

"BY MR. WAKSER:

"Q. Now Mr. Freeman, you took no aggressive action towards my client other than pulling a knife and a baseball bat, right.

"BY MR. MARAGAS: Oh, objection, Your Honor.

"BY THE COURT: Overruled.

"BY MR. MARAGAS: Isn't this what we just got done talking about?

"BY THE COURT: I'm going to overrule the objection, Mr. Maragas.

"BY MR. MARAGAS: Then may I get into his past?

"BY THE COURT: Mr. Maragas, no. Sit down."

The following instances of misconduct occurred during the testimony of Jason Page, a defense witness:

"Q. But I think the main point I want to make sure about is that although they were having words in the car and although Zebb got out of the car with a knife and a bat, Steven, being the brave man that he is, gets in Zebb's car—

"BY MR. WAKSER: Objection.

"BY MR. MARAGAS: I'll rephrase it.

"BY THE COURT: Okay.

"BY MR. MARAGAS: I'll rephrase it.

"BY THE COURT: Let's ask a question.

"Q. Zebb gets into—or gets out of his car with a bat and a knife, and here comes Steven Gardner, the white prince, and he gets in—

"BY MR. WAKSER: Objection.

"BY THE COURT: Let's—

"BY MR. WAKSER: The prosecutor should ask a question.

"BY THE COURT: Okay, yes, let's refrain from the editorial comments.

"BY MR. MARAGAS: Okay.

"BY THE COURT: Let's just ask a question and preferably a simple question.

"BY MR. MARAGAS: Okay, I'll try and satisfy the court.

"BY THE COURT: Please do.

"Q. I do not understand, why a person would get out of their car and go towards another person's car who has a bat and a knife.

"A. Out his car?

"Q. Yes, why?

"A. To get his phone and talk to his woman.

"Q. This guy must be really brave, I don't understand that.

"BY MR. WAKSER: Objection, Your Honor.

"BY THE COURT: This is getting argumentative, I'll sustain that.

"* * *

"Q. Okay. So, I'm asking you again, did you know why your friend, Steve, ignored the threat of a bat and a knife being held in the hands of Zebb, and blatantly went into Zebb's car?

"BY MR. WAKSER: Objection, Your Honor. It's been asked and answered and assuming facts not in evidence.

"BY MR. MARAGAS: It's not been answered.

"BY THE COURT: He did answer it. He did answer it.

"BY MR. MARAGAS: Well, refresh my mind, why?

"BY THE COURT: Well, I'm not going to do that, he answered it. Move on to another area."

The following instances of misconduct occurred during the examination of Shointa Smith:

"Q. If Steve—this is a direct quote from Mr. Wakser. If Steve would have assaulted you, you would have told the police and prosecutor, you answered, yes.

"A. Yes.

"Q. Well, it just so happened, that you have told the police about prior incidents, and you did not prosecute. We ended up in this very same position, we had to dismiss—

"BY MR. WAKSER: Objection, Your Honor, may we approach?

"* * *

"Q. She drove you back and forth from North Canton to Canton. If you didn't have the time to come here and testify, when you were subpoenaed to testify, isn't that true?

"BY MR. WAKSER: I'm going to object, we're not here—the witness is not a defendant or accused.

"BY MR. MARAGAS: She is a hostile witness.

"BY THE COURT: Okay, well,—

"BY MR. MARAGAS: And she's your witness, by the way.

"BY THE COURT: Okay, Counsel if you have any comments to make, you make it to the bench. I think you made your point, Mr. Maragas. I'm going to sustain the objection.

"* * *

"Q. Uh huh (yes). Do you know of any particular reason why your mother would call our office fearful of your health, in regard to this case?

"BY MR. WAKSER: Objection, irrelevant, Your Honor, assuming facts not in evidence.

"BY THE COURT: Yes, unless you're going to bring her mother in here, I'm going to sustain that objection.

"Q All right. Here's her notes. Tell me if this is correct. There was a car wreck, the police came, the victim says the defendant hit her in the face, wouldn't say much else, said last time she pressed charges—oh, excuse me.

"MR. WAKSER: I'm going to object.

"BY MR. MARAGAS: I apologize to the court.

"BY THE COURT: Okay, sustained, jury will disregard that last question. Okay."

Further, in closing argument, the prosecutor stated that dealing with a hostile witness is very difficult, especially when the hostile witness is the victim, as battered women's syndrome is a pretty tough thing to deal with.

While the court sustained appellant's objections to the inappropriate statements and editorial comments by the prosecutor, the record does not demonstrate that the prosecutor was strongly admonished to end his inappropriate conduct, either in or out of the presence of the jury. The court did give several cautionary instructions to the jury to disregard any comments relative to past instances of domestic violence by appellant. However, given the improper tenor of the prosecutor's conduct throughout the entire trial and the prosecutor's persistence is asking inappropriate questions after the court repeatedly sustained appellant's objections, we conclude that the court abused its discretion in overruling appellant's motions for mistrial. The case hinged solely on the credibility of the eyewitnesses, all of whom were close friends of either appellant or the victim. We cannot conclude that the error was harmless in the instant case. The prosecutor's misconduct was so prejudicial and so pervasive that the steps taken by the court were insufficient to cure the error.

■ The prosecutor attempts to argue now that appellant opened the door to questioning concerning past instances of misconduct. He directs our attention to two questions asked by defense counsel to Shointa Smith, concerning whether appellant struck her "at any time." However, viewing the questions in the context of the trial, it is clearly apparent that the prosecutor was referring the incident occurring on June 24, 1997, and the question was directed to whether appellant struck her at any time on that night. Further, if the prosecutor

believed that appellant had opened the door to such questioning, the issue should have been addressed at side bar and not in front of the jury.

Attorneys who know how to think but have not learned respect or how to behave toward the court, their opponent, or the witnesses are a menace and a liability, not an asset, to the administration of justice. We suggest the necessity for civility and respect is relevant to lawyers because they are the living exemplars—and thus teachers—everyday, in every case, and in every court, and their worst conduct will be emulated more readily than their best.

The assignment of error is sustained.

The judgment of conviction and sentence is reversed. This case is remanded to the Canton Municipal Court for new trial.

*Judgment reversed*
*and cause remanded.*

FARMER, P.J., and JOHN W. WISE, J., concur.