[Cite as *State v. Smith*, 2011-Ohio-5095.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | W. Scott Gwin, P.J. |
|  | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 2011CA00015 |
|  | : |  |
|  | : |  |
| JESSICA RENEE SMITH | : | O P I N I O N |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:       Criminal Appeal from Stark County Court of Common Pleas Case No. 2010CR0196

JUDGMENT:       Affirmed In Part and Reversed and Remand In Part

DATE OF JUDGMENT ENTRY:       September 26, 2011

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney
Stark County, Ohio

BY: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South
Suite 510
Canton, Ohio 44702-1413

For Defendant-Appellant

BERNARD L. HUNT
2395 McGinty Road, N.W.
North Canton, Ohio 44720

*Edwards, J.*

{¶1}   Defendant-appellant, Jessica Smith, appeals her conviction and sentence from the Stark County Court of Common Pleas on one count of vehicular homicide. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On or about March 15, 2010, the Stark County Grand Jury indicted appellant on one count of vehicular homicide in violation of R.C. 2903.06(A)(3), a felony of the fourth degree. At her arraignment on March 19, 2010, appellant entered a plea of not guilty to the charge.

{¶3}   Subsequently, a jury trial commenced on October 25, 2010. The following testimony was adduced at trial.

{¶4}   Kim Haas, the manager of the Speedway gas station on Mahoning Road, in Canton, Ohio, was working on December 23, 2009, when she learned from a food steward and one of the cashiers that a customer had been injured. The injured customer was Maurice Gillespie. Haas testified that she assisted the police in investigating the accident by burning a DVD from the store surveillance at the time of the accident. The videotape showed Gillespie entering the Speedway to purchase his coffee and then leaving out the front door. As Gillespie exited the store, a dark car parked outside the entrance backed up and hit Gillespie. The car then departed, but left a passenger behind. Maurice Gillespie, who had a fractured shoulder and fractured hip, was taken to the hospital.

{¶5}   According to Haas, the passenger, who turned out to be Steve Altier, appellant's boyfriend, helped Gillespie get inside the store. When Canton Police Officer

Darrel Pierson arrived on the scene, Gillespie was sitting in a chair inside the Speedway doorway with medical personnel and firemen around him. According to the officer, Gillespie was in pain and was distraught. When Officer Pierson asked appellant what had happened, appellant stated that "he was walking through the parking lot and pretty much the bitch ran me over." Transcript at 170. After speaking with Altier, Officer Pierson developed the name "Renee Johnston" as the driver of the vehicle that had struck Gillespie.

{¶6} Canton Police Officer Michael Gary testified that he ran a computer search on Steve Altier who he had dealings with before. During the search, the officer discovered that Jessica Renee Smith was a known associate of Altier.

{¶7} At trial, Frank Altier testified that Steve Altier was his son and that, in December of 2009, his son was staying off and on with appellant. Frank Altier testified that, at around Christmastime, his son and appellant asked him to rent a car for him. He testified that he did not do so.

{¶8} The next witness to testify was Kurt Henley. Henley testified that in mid-December of 2009, he rented a car for appellant, whose driver's license had been suspended for not having insurance, from Enterprise Rent-A-Car. Henley testified that appellant went with him to rent the car and that he rented the car for three days. On December 26, 2009, Henley was contacted by Enterprise Rent-A-Car after the car had not been returned. After appellant failed to return the car, Henley gave the car rental agency her address on Mahoning Road.

{¶9} Officer Kim Elliott of the Canton Police Department testified that, as part of the investigation, she went to Enterprise-Rent-A-Car to obtain rental agreement records

for a 2009 black Chevy Impala that had been rented by Kurt Henley. While at the car rental agency, the officer retrieved items that had been taken from the car once it was towed from appellant's address. The items included a purse, diapers, baby items, clothing and lingerie.

{¶10} Brad Frank, the branch manager of the Enterprise-Rent-A-Car on Market and Ninth Street in Canton, testified that he was working in December of 2009. He testified that Kurt Henley rented a black Chevy Impala on December 16, 2009 and that, when the car was not returned, he went to Henley's house and told him that they needed the car back. After the car was not returned by the next morning, Frank called Henley who gave him appellant's address. Frank went to the address on December 29, 2009 and saw the car in the driveway. Frank testified that he knocked on appellant's door, but no one answered although he heard "rumblings" inside the apartment. Transcript at 238. Frank then called the police and also called for a tow truck. According to Frank, appellant came out of the apartment and then went back inside. When a police officer arrived, Frank asked him if he could get the keys from appellant. Appellant, however, refused to open the door. Once the tow truck arrived, the car was towed and the personal belongings in the same were taken out of the car and labeled.

{¶11} Due to pulmonary emboli caused by trauma from the accident and the necessary immobilization, Gillespie died on December 30, 2009, and an arrest warrant was issued for appellant for causing his death. Officer Gary testified that after he arrested appellant on February 11, 2010, she said that she had no idea about the accident and denied knowing Steve Altier. She also denied knowing Kurt Henley, the man who had rented the car that she was driving.

{¶12} Detective Mike Volpe of the Canton Police Department testified that he knew Steve Altier and that, in February of 2010 while on patrol, he was dispatched in response to a trouble call during the afternoon. The Detective testified that witnesses had seen someone jump into the vehicle that was the subject of the trouble call and drive away. When Detective Volpe stopped the vehicle, he recognized Altier as the driver. Appellant and her children were in the back seat. According to the Detective, appellant appeared to know Steve Altier.

{¶13} Detective Sean Flaherty of the Canton Police Department testified that he was assigned to investigate the accident. Detective Flaherty testified that he spoke with Steve Altier's parents and that they told him that Renee Johnston was their son's girlfriend. The Detective was able to identify the car as a rental car from Enterprise Rent-A-Car and determine that it was rented by Kurt Henley. When the Detective went to appellant's apartment, appellant had just come out of her apartment with her two kids and was starting to walk down the stairs. When he asked her if she was Renee Smith, appellant said no. The name on appellant's driver's license was Jessica R. Smith. Detective Flaherty asked appellant if the "R" stood for "Renee" and appellant indicated that she did not go by that name. When the Detective told appellant that he was there to talk to her about a traffic crash that occurred at Speedway, appellant stated that she was not involved in one and indicated that she did not drive. Appellant was not "real cooperative" and told the Detective that she would not answer any questions. Transcript at 369. Detective Flaherty later inspected the items that were retrieved from the repossessed rental car and testified that the items included a letter in the passenger seat addressed to "Steve Altier." When Detective Flaherty went to appellant's apartment

to arrest her, the person behind the door indicated that Jessica Renee Smith did not live there and refused to open the door. While they were talking, Officer Gary saw appellant come to the window and close the curtain. The officers then forced the door open and arrested appellant.

{¶14} Testimony was adduced at trial that, while in jail, appellant made at least two telephone calls that were recorded and introduced at trial. During the calls, appellant admitted that she was driving the car at the time of the accident and that she got the rental car from Kurt Henley.

{¶15} At the conclusion of the evidence and the end of deliberations, the jury, on October 27, 2010, found appellant guilty of vehicular homicide. Pursuant to a Judgment Entry filed on October 29, 2010, appellant was sentenced to eighteen (18) months in prison. As memorialized in a Judgment Entry filed on November 8, 2010, appellant's driver's license was suspended for a period of five years.

{¶16} Appellant now raises the following assignments of error on appeal:

{¶17} "I. THE TRIAL COURT VIOLATED RULE 43 WHEN IT FAILED TO IMPOSE A LICENSE SUSPENSION DURING THE APPELLANT'S SENTENCING HEARING AND DID SO AT A LATER DATE.

{¶18} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE APPELLANT'S MOTION FOR A MISTRIAL.

{¶19} "III. THE TRIAL COURT COMMITTED ERROR WHEN IT DENIED APPELLANT'S RULE 29 MOTION FOR AQUITTAL [SIC]."

I

{¶20} Appellant, in her first assignment of error, argues that the trial court erred in suspending appellant's driver's license outside of appellant's presence. We agree.

{¶21} As is stated above, pursuant to a Judgment Entry filed on October 29, 2010, appellant was sentenced to eighteen (18) months in prison. Thereafter, as memorialized in a separate Judgment Entry filed on November 8, 2010, appellant's driver's license was suspended for a period of five years. Appellant now contends that the trial court violated Crim.R. 43 by failing to impose the mandatory license suspension during appellant's sentencing hearing and doing so at a later date.

{¶22} Crim.R. 43(A)(1) states as follows:

{¶23} "Except as provided in Rule 10 of these rules and division (A)(2) of this rule, the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, *and the imposition of sentence,* except as otherwise provided by these rules. In all prosecutions, the defendant's voluntary absence after the trial has been commenced in the defendant's presence shall not prevent continuing the trial to and including the verdict. A corporation may appear by counsel for all purposes." (Emphasis added).

{¶24} In *State v. Robar*, Delaware App. No. 10-CAC-03-0022, 2010-Ohio-5319, this Court held that the trial court failed to comply with Crim.R. 43 by suspending the appellant's driver's license via a sentencing entry without imposing the license suspension during the sentencing hearing. We reversed and remanded the matter for a new sentencing hearing.

**{¶25}** Based on *Robar*, and on the fact that the State concedes the matter should be reversed and remanded for resentencing, appellant's first assignment of error is sustained.

II

**{¶26}** Appellant, in her second assignment of error, argues that the trial court erred when it denied appellant's motion for a mistrial. We disagree.

**{¶27}** The granting of a mistrial rests within the sound discretion of the trial court as it is in the best position to determine whether the situation at hand warrants such action. *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900; *State v. Jones* (1996) 115 Ohio App.3d 204, 207, 684 N.E.2d 1304, 1306.

**{¶28}** "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497. The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9; *State v. Treesh*, 90 Ohio St.3d 460, 480, 2001-Ohio-4, 739 N.E.2d 749, 771. When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn* (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793–794, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728; *State v. Gardner* (1998), 127 Ohio App.3d 538, 540–541, 713 N.E.2d 473, 475.

**{¶29}** In the case sub judice, Officer Pierson testified that when he asked Maurice Gillespie what had happened, Gillespie "stated that he was walking through the

parking lot and pretty much the bitch ran me over." Transcript at 170. Appellant then objected and asked for a mistrial. The following discussion then occurred on the record:

{¶30} "THE COURT: Wish I would have known that was going to be the answer.

{¶31} "MR. SCOTT: Well, the fact that he used the term bitch refers more badly on him than it does on the victim.

{¶32} "Secondly, it is excited utterance and present sense.

{¶33} "THE COURT: Yeah. I think it is a hearsay exception.

{¶34} "I don't really like the language. But in all honesty, Mr. Graham, I think the language helps you defending your client.

{¶35} "I think it is a hearsay exception. So please proceed." Transcript at 171.

{¶36} Appellant now contends that the use of the word "bitch" was inflammatory and prejudiced the jury against appellant. However, we find that such statement constitutes an excited utterance under Evid .R. 803(2). An "excited utterance" is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. See *State v. Duncan* (1978), 53 Ohio St.2d 215, 373 N.E.2d 1234.

{¶37} In the case sub judice, such statement was made shortly after Gillespie had been run down in a hit-and-run incident that caused him serious injuries and severe

pain. There was testimony that Gillespie was distraught when such statement was made. Moreover, while appellant asserts that the word "bitch was inflammatory and prejudiced the jury against her, we note that her trial counsel, during cross-exanimation, used the word "bitch" five times before being advised by the trial court that "we got the point about the bitch." Transcript at 182. Finally, as noted by appellee and the trial court, the use of such word reflected badly on Gillespie and to appellant's benefit.

**{¶38}** Appellant's second assignment of error is, therefore, overruled.

III

**{¶39}** Appellant, in her third assignment of error, argues that the trial court erred in denying appellant's Crim. R. 29 motion for acquittal. We disagree.

**{¶40}** In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, e.g., *State v. Carter*, 72 Ohio St.3d 545, 553, 1995-Ohio-104, 651 N.E.2d 965, 974; *State v. Jenks* (1991), 61 Ohio St.3d 259 at 273, 574 N.E.2d 492, 503.

**{¶41}** When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); *Jenks,* supra. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*

(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d at 503.

{¶42} Appellant specifically contends that the evidence failed to establish beyond a reasonable doubt that her conduct constituted a substantial lack of due care. Appellant was convicted of vehicular homicide. That offense is set forth in R.C. 2903.06(A)(3)(a), and provides, in pertinent part:

{¶43} "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another in any of the following ways ... negligently...."

{¶44} Under R.C. 2903.06(A)(3)(a), therefore, the elements which must be proved beyond a reasonable doubt are (1) operation of a motor vehicle, (2) lack of due care during the operation of that vehicle, and (3) death proximately caused by that lack of due care. *State v. Vaught* (1978), 56 Ohio St.2d 93, 94-95, 382 N.E.2d 213, 214. [Construing former statute R.C.2903.07 (A) ].

{¶45} R.C. 2901.22(D) defines criminal negligence as follows: "(D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

{¶46} In the case sub judice, there was evidence that appellant backed up in the very busy parking lot of a Speedway two days before Christmas and struck Gillespie. As a result, Gillespie suffered fractures to his shoulder and to his hip and ended up dying from pulmonary emboli resulting from the accident. Testimony was adduced at trial that

the Speedway was busier than usual because of the holiday.   Appellant, after striking Gillespie, drove off, leaving her passenger behind.  We find, based on the foregoing, that the trial court did not err in denying appellant's Crim. R. 29 motion for acquittal. We find that the evidence did not fail to establish beyond a reasonable doubt that appellant's conduct constituted a substantial lack of due care.

{¶47}  Appellant's third assignment of error is, therefore, overruled.

{¶48}  Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed and remanded in part.

By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

                                        JUDGES

JAE/d0714

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JESSICA RENEE SMITH | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011CA00015 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed in part, and reversed and remanded to the trial court for further proceedings. Costs assessed to appellant.

_____

_____

_____

JUDGES