The STATE of Ohio, Appellee,

v.

DRAUGHN, Appellant.

[Cite as *State v. Draughn* (1992), 76 Ohio App.3d 664.]

Court of Appeals of Ohio,
Muskingum County.

No. CA 91–30.

Decided June 24, 1992.

W. *Allen Wolfe,* Prosecuting Attorney, and *Mark C. Fleegle,* for appellee.
*Ken Murray* and *Paul Croushore,* for appellant.

MILLIGAN, Judge.

Following a jury trial in the Court of Common Pleas of Muskingum County, appellant, Alvin B. Draughn, was convicted of aggravated trafficking (R.C. 2925.03[A][1]) with a prior conviction specification (R.C. 2925.03[C][1]), and sentenced to five to fifteen years' incarceration. Appellant appeals and makes the following assignments of error:

"Assignment of Error Number One

"The trial court erred in holding this trial when there was conduct by the defendant which called for investigation as to defendant's present competence.

"Assignment of Error Number Two

"The trial court erred in failing to grant defendant's motion for a mistrial due to prosecutorial misconduct.

"Assignment of Error Number Three

"The trial court erred in refusing to give an informant instruction when the defendant requested it."

In late 1990, Shawnte Hollins was trying to sell a pair of shoes in Edna's Bar. Because Hollins's father owed appellant money, appellant took the shoes, striking Hollins in the face with the shoes. Hollins told appellant, "[p]ayback's a bitch."

Hollins went to the police station, intent on getting revenge on appellant. He asked police to take him to the hospital, and requested to work with the undercover drug unit. He told the police that he wanted revenge on appellant. Hollins used drugs in the past and knew the local dealers.

Hollins made thirteen to fourteen controlled drug buys for police. The police paid Hollins $50 for each of the twenty-three charges the buys produced. Hollins was given a $150 Christmas bonus and a $1,000 bonus when he finished his work. When Hollins began working for the police, no charges were pending against him.

On December 14, 1990, Hollins went to the house appellant shared with his girlfriend to make a controlled buy. He initially bought a $50 rock of cocaine from appellant's girlfriend. Appellant told Hollins that he had some "shakes" or "crumbs" (pieces of a rock of cocaine). Hollins told appellant he would return later in the day.

The police took Hollins to the Muskingum County Fair Grounds and searched him. They gave him $50 and took him back to appellant's house.

Appellant was sleeping when Hollins returned. Appellant woke up and told Hollins he did not have the crumbs. Appellant's girlfriend handed appellant a rock of cocaine, which he sold to Hollins for $50. The transaction was recorded through electronic surveillance.

Following jury trial in Muskingum County Common Pleas Court, appellant was convicted of aggravated trafficking and sentenced.

## I

On June 17, 1991, appellant was found not competent to stand trial. He received treatment.

In a report dated September 6, 1991, and filed with the court on September 13, 1991, appellant was found to be competent to stand trial by the Ohio Department of Mental Health. The court found him competent on September 16, 1991, and trial commenced on September 23.

Appellant argues the court should have inquired into his competence after trial began, due to his irrational behavior: (1) appellant insisted on wearing his orange prison jumpsuit for trial; (2) appellant answered a question concerning whether counsel was correct with the response, "More so, yes"; (3) appellant

did not inform counsel of a potential alibi witness until several days before trial.

A defendant is not competent to stand trial if his mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing a defense. *Drope v. Missouri* (1975), 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103, 112.

After trial commences, the court need only conduct a competency hearing for good cause shown. R.C. 2945.37(A). This determination is within the sound discretion of the trial court. *State v. Rahman* (1986), 23 Ohio St.3d 146, 156, 23 OBR 315, 323, 492 N.E.2d 401, 410.

■ In determining whether to *sua sponte* hold a competency hearing, the court should consider: (1) doubts expressed by counsel as to competency; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion concerning competency. *State v. Rubenstein* (1987), 40 Ohio App.3d 57, 531 N.E.2d 732, paragraph two of the syllabus.

Counsel did not express doubts concerning competency at trial, and did not object to admission of the report finding appellant competent.

■ The alleged instances of irrational behavior are insufficient to require inquiry into competency. Appellant told the court that he had civilian clothes, but that he did not want to wear them. He stated that his attorneys explained that he was facing a five to twenty-five year sentence and he felt it did not matter what he wore for trial. He stated that he would only wear civilian clothes if they physically dressed him. As to his response of, "More so, yes," when the court again sought a response, appellant replied, "Yes." Informing counsel late of a potential witness is not so irrational so as to require the court to inquire into competency. The record does not demonstrate irrational behavior or unusual demeanor of an extent that would require inquiry into competency. See *Rubenstein, supra* (defendant's refusal to allow counsel to make an opening statement and to cross-examine the state's witnesses not sufficient to require competency hearing); *Rahman, supra* (court not required to conduct competency inquiry where defendant refused to continue testimony during state's cross-examination).

Further, a medical report filed September 13, signed by a psychiatrist, found appellant competent to stand trial. The report states that he was enjoying good remission, which was not chemically induced.

The court did not abuse its discretion in not inquiring into competency during trial. The first assignment of error is overruled.

## II

Appellant argues that the trial court erred in overruling his motion for a mistrial based on the misconduct of the prosecutor in closing argument.

In making closing argument, the defendant and the state are entitled to a level playing field. The constitutional advantage given to the defendant is the presumption of innocence and corresponding high burden of proof placed on the state. As part of the systemic effort to keep the playing field level, the state is given the right to open and close both the evidence and argument—a legitimate *quid pro quo.*

■ In opening closing argument the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, "The evidence supports the conclusion that these witnesses are telling the truth." He cannot say, "I believe these witnesses," because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. See *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses. *Id.*

■ As to the defense witnesses, including the defendant, the prosecutor may comment upon the testimony, and suggest the conclusions to be drawn therefrom. He can say, "The evidence supports the conclusion that the defendant is lying, is not telling the truth, is scheming, has ulterior motives, including his own hide, for not telling the truth." See *State v. Strobel* (1988), 51 Ohio App.3d 31, 554 N.E.2d 916. He may not say, "I believe the defendant is lying," for the same reasons as above.

■ In his rebuttal argument, the prosecutor may argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.

■ Generally the credibility of various witnesses will now have been put in issue by the argument of the defense. Considerable additional latitude is due the prosecutor at this juncture, either on fair play grounds or because the comments are invited by the defense. The prosecutor should be allowed to go

as far as defense counsel. Thus, if the defense accuses witnesses of lying, the prosecutor should have the same right.

However, the prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case. *United States v. Solivan* (C.A.6, 1991), 937 F.2d 1146.

The prosecutor is not only entitled, he is encouraged to advocate strongly, even vehemently, for conviction. But while he may strike hard blows, the prosecutor is not at liberty to strike foul ones. *Berger v. United States* (1935), 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

The prosecutor's conduct should always be judged within the context of the whole case, and more particularly, the whole argument.

We now turn to the consequences of overstepping by the prosecutor. The trial of the case is under the control of the trial judge, who must monitor the proceedings as they develop, and control the conduct of both counsel. Because the trial judge is present and sees and hears all that goes on, great deference should be accorded to his judgment as to how to handle these issues.

When misconduct occurs, the trial judge should admonish the prosecutor, and if the conduct is severe enough, admonish him within the presence of the jury. He should instruct the jury to disregard the prosecutor's statements only if requested by defense counsel. *State v. Harcourt* (1988), 46 Ohio App.3d 52, 546 N.E.2d 214. If appellant moves for a mistrial, the court should overrule the motion only if satisfied that the conduct will not result in a miscarriage of justice, considering the curative steps taken by the court. He should order a mistrial on his own motion only if satisfied that the conduct is flagrant and the error is so egregious that no curative instruction will set the case aright.

When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. See *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728.

The judge has a duty to notify disciplinary counsel if he declares a mistrial or if the conduct is severe enough that the judge admonishes the prosecutor in the presence of the jury. See *State v. DePew* (1988), 38 Ohio

St.3d 275, 528 N.E.2d 542, certiorari denied (1989), 489 U.S. 1042, 109 S.Ct. 1099, 103 L.Ed.2d 241.

It strikes us that courts have been too quick to label prosecutorial behavior misconduct, justifying an affirmance of the conviction on the ground that the evidence of guilt was overwhelming. See *Maurer, supra; DePew, supra.* The incongruity of this rationale is that the better the state's case, the more leeway is given to the prosecutor to overstep. As this court asked almost a decade ago, if the argument is harmless because the evidence of guilt is overwhelming, why must the prosecutor overstep in final argument? *State v. Arnold* (Mar. 17, 1983), Muskingum App. No. 82–CA–13, unreported, 1983 WL 5076. It is in the close. case that the conduct is scrutinized more closely. Thus a prosecutor jeopardizes his case by misconduct in direct proportion to its prosecutive merit. We believe the consequences of misconduct should be resolved essentially without regard to the merit of the evidence. The quality and quantity of the evidence is almost always subject to an independent assignment of error and judicial review.

The defense counsel argued in pertinent part:

"My mother used to use the word surmise. I'm from Southern Ohio. I'm from down along the Ohio River down around the hills. We sometimes use old-fashioned words. When I was a child growing up, we would often use the word, don't surmise this. I thought that's an old-fashioned word. They don't use that anymore. But as I look at this case, I think that's a good word. That's exactly what Detective Robson is doing. He's trying to surmise what the words on that tape means.

"You can't do that, not in this country. We don't put a man's liberty in jeopardy on somebody's suspicions or somebody's interpretation of what they want a word to mean. That's not what this court system is about. Evidence has been introduced to demonstrate that Alvin Draughn was convicted of a drug offense, possession of drugs in New Jersey.

"Once again, ladies and gentlemen, this country, I believe, and I submit to you that we try to try a man on what he has allegedly done or hasn't done, not what he might have been a number of years ago back in 19—what—84.
" * * *

"I suggest to you that you cannot be convinced beyond a reasonable doubt, and once again, ladies and gentlemen, in this country, we don't send people away, we don't put their liberty in jeopardy because of suspicion or because of the testimony of a 21 year old drug dealing, drug using, paid thief."

The prosecutor rebutted in pertinent part:

"I think you can tell from this testimony that we have a drug crack cocaine problem in this county, and as jurors you really are simply the truth finders. You're to determine who is telling the truth. And I want to say to you that we are proud to represent these young, brave men on our S.I.U. unit, who themselves go undercover, are out there at night at all times of the day and night—

"MR. McHENRY: You [*sic*] Honor, I'm going to object to—

"MR. WOLFE: Well, you—

"THE COURT: Sustained.

" * * *

" * * * Plus, this case is not about Shawn Hollins. It's about our S.I.U. unit.

" * * *

"Now, here's this defendant. Convicted in New Jersey, uses—either uses what—fifteen hundred dollars in one evening—is that the testimony? That's usage? Crack cocaine he uses?

"MR. McHENRY: Objection, Your Honor.

"MR. WOLFE: Isn't that what he—

"THE COURT: Sustained.

" * * *

"I remember years ago that this Hedgewood address is in my old neighborhood, and at the end of the street there was a field of weeds and cactus, and the City cleared that field off, and the mothers had bake sales, and what came from that was a beautiful park, and it was named after the deceased policeman who lost his life, Cutty Dixon. The Cutty Dixon Memorial Park. I went over there a couple years ago—

"MR. McHENRY: Your Honor, I'm going to object.

"MR. WOLFE: Now, we talked about—

"THE COURT: Mr. Wolfe, I don't want you arguing with defense counsel.

"MR. WOLFE: I think I can tie it together.

"THE COURT: Come forward.

" * * *

"THE COURT: Objection sustained.

"MR. WOLFE: Well, getting back to the testimony of Darrell Baker, when you review all these facts, when you think of what is going on over there on

Hedgewood Avenue, when you—I submit to you, ladies and gentlemen of the jury, we are at war with the likes of Alvin Draughn.

"MR. McHENRY: Objection, Your Honor.

"THE COURT: Sustained."

Following this argument, a conference took place at the bench. Defense counsel asked the court to declare a mistrial based on prosecutorial misconduct, or barring that, a cautionary instruction. The court overruled the motion for mistrial, and instructed the jury to disregard the prosecutor's remarks.

■ The prosecutor's argument was clearly an appeal to the jury to convict appellant to aid their local police in taking back their neighborhoods from drug dealers. This argument was not invited by defense counsel's argument. Counsel's argument concerning the word "surmise" was a comment on the evidence, as the officers testified that the tape did not affirmatively demonstrate the sale of crack cocaine, but that was their own interpretation of the words used on the tape. The argument of the prosecutor cited above was clearly and flagrantly improper, as the prosecutor urged the jurors to convict appellant to aid in the war on drugs. See *Solivan, supra.*

■ We next must determine if the argument was so prejudicial that it was not cured by the court. While the court sustained appellant's objections to the argument, the record does not demonstrate that the prosecutor was ever admonished by the court either in or out of the presence of the jury. The court gave a cautionary instruction to the last comment, stating only that he sustained an objection to the prosecutor's last remark with reference to war with appellant, and instructed them to disregard his statements in that respect. Given the improper tenor of the entire rebuttal argument, and the prosecutor's persistence in making such argument after the court repeatedly sustained appellant's objections, the court abused its discretion in overruling the motion for mistrial. This was a close case, hinging on the testimony on an informant who admittedly was out for revenge against appellant. We cannot say that the error was harmless. The rebuttal argument was so prejudicial that the steps taken by the court were insufficient to cure the error.

As the court abused its discretion in not granting appellant's motion for mistrial, the second assignment of error is sustained.

### III

■ Appellant requested that the court specially instruct the jury as to the credibility of Hollins, relying on *United States v. Griffin* (C.A.6, 1967), 382 F.2d 823. Appellant requested the court to give the Ohio Jury Instructions

accomplice instruction, changing "accomplice" to "informant." The trial court did not give the requested instruction.

In *Griffin*, the informant testified that the defendant was involved with a woman in selling heroin. Defendant was wired on several occasions when he purchased heroin from the woman. Several agents testified as to these sales, which they listened to pursuant to a radio. The agents observed the defendant sitting in a parked car near the scene of these buys. However, no evidence corroborated the informant's testimony that the defendant was involved with the woman in selling drugs.

The Sixth Circuit Court of Appeals found plain error in the court's failure to give a special cautionary instruction to the jury as to the credibility of the informant. The sufficiency of the instructions depends on other incriminating circumstances tending to corroborate the informant. A cautionary instruction was required because the informant could easily have totally manufactured the allegations against defendant. Further, the evidence against the woman was abundant, increasing the danger that the jury transferred her guilt to the defendant. Not one witness other than the informant spoke to the defendant's guilt. *Id.* at 828–829.

*Griffin* does not require an addict-informant instruction in all cases involving informant testimony; the need for the instruction depends on the circumstances of the case. *United States v. Brown* (C.A.6, 1991), 946 F.2d 1191, 1195. In *Brown*, the court found that the trial court's general instructions on credibility provided sufficient protection, and the court did not err in failing to give the requested informant instruction. It was clear that the jury was aware that the informant was an admitted narcotics addict paid by the police. The informant could not have manufactured all of the evidence, as there was corroboration. *Id.* See, also, *United States v. McGhee* (C.A.6, 1989), 882 F.2d 1095 (no instruction required where informant's testimony was corroborated by electronic surveillance and evidence from a search); *United States v. Butler* (C.A.D.C.1973), 481 F.2d 531 (jury aware that witness was an addict, evidence was corroborated).

In the case *sub judice*, the record is replete with references to the informant's drug use, the money informant received from the police, and the informant's desire to get revenge on appellant. The informant's testimony is corroborated by the taperecording of the buy, and the testimony of the officers who listened during the buy. The informant was searched before the buy, and entered appellant's residence without drugs on his person. Police observed him from the time he left the police car until he entered the house, and again from the time he left the house until the time he got into the car. He did not speak to anyone or stop to pick anything up while walking on the

street.  He returned to the car with a rock of cocaine, and without the $50 the police gave him.

The court instructed the jury to weigh the credibility of the witnesses, and that they were not required to believe a witness simply because he was under oath.  The jury was instructed to apply the test of truthfulness they apply in their daily lives, including interest, bias, reasonableness of testimony, and all the facts and circumstances surrounding testimony.  Given the corroborating evidence in this case, this instruction was sufficient, and the court did not err in refusing to give the special informant instruction.

The third assignment of error is overruled.

The judgment of the Muskingum County Common Pleas Court is reversed, and this cause is remanded to that court for a new trial.

*Judgment reversed*
*and cause remanded.*

GWIN, P.J., and WILLIAM B. HOFFMAN, J., concur.