OPINION *Page 2 
{¶ 1} Defendant-appellant Johnny O. Griffin, Jr. appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of rape, in violation of R.C. 2907.02(A)(1)(b), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On March 17, 2006, the Stark County Grand Jury indicted Appellant on the aforementioned charge. Appellant appeared before the trial court for arraignment on March 24, 2006, and entered a plea of not guilty to the indictment. The trial court scheduled the matter for jury trial on April 17, 2006. Prior to the scheduled trial date, the State filed a Motion to Admit Other Acts Evidence, seeking to present evidence of Appellant's 2002 conviction for sexual battery and corruption of a minor and the evidence surrounding those offenses. Appellant filed a motion in opposition thereto as well as a request for a limiting instruction regarding the use of "other acts" evidence.
 {¶ 3} The matter proceeded to jury trial on May 2, 2006, however, the jury was unable to reach a verdict and the trial court declared a mistrial. The trial court rescheduled the matter for jury trial on May 30, 2006.
 {¶ 4} The following evidence was adduced at trial. On February 1, 2006, Appellant and his girlfriend, Lisa Minor, were at the home of Minor's sister and her fiancé, playing cards and drinking beer. When Appellant and Minor left, they returned to the residence at 528 East Milner Street in Alliance, Ohio, where Minor and her two *Page 3 
daughters lived with Michelene Hughes, her husband and four children.[1] Between 2:00 and 2:30 in the morning on February 2, 2006, Appellant entered Amber McKenney's room and woke up the twelve year old girl. Amber is one of Hughes' children. Appellant asked Amber to come into Minor's room. Amber joined Minor and Appellant, and the three talked and listened to music. After Minor fell asleep, Amber left the room and proceeded downstairs into the living room to watch television. Appellant joined the girl approximately ten minutes later.
 {¶ 5} Appellant asked Amber why she was watching TV when she could hang out with him. Amber shrugged her shoulders, and continued to watch a show. Appellant instructed Amber to go upstairs and change into shorts. Although Amber did go upstairs, she changed into pajama pants, then returned downstairs. Appellant had returned to Minor's room, but then returned to the living room. Appellant laid Amber on the couch and laid on top of her. He then asked the girl if she would go upstairs with him. Amber returned upstairs. Appellant turned off the television and followed her.
 {¶ 6} The two proceeded to Minor's room. Appellant laid down and asked Amber to join him. Appellant moved his hand up Amber's shirt and then down her pants. Appellant removed the girl's pants and placed his penis into her vagina. He also licked his fingers and placed them into her vagina. Amber did not notice or feel if Appellant ejaculated. Amber went to her bedroom and began to redress. Appellant came to her door and asked her to go into the bathroom, where he then asked her if they were "still cool". Appellant returned to Minor's room. Amber returned to her room and woke up her ten year old sister. When Amber had the opportunity, she told her *Page 4 
sister what had happened. Amber went to school the next morning and told one of her friends. Amber sent a request to see her mentor, Rachel Myers. Amber disclosed the abuse to Myers, and subsequently the mental health counselor at the school. The counselor contacted child protective services.
 {¶ 7} Det. Roy Tittle of the Alliance Police Department was called to the Alliance Middle School on February 2, 2006, in reference to a report of a sexual assault. Once at the school, Det. Tittle spoke with Amber in the presence of Rachel Myers. The detective contacted Children's Protective Services as well as Amber's mother. Det. Tittle referred Amber's mother to Akron Children's Hospital for a sexual assault kit.
 {¶ 8} That afternoon, Detective Tittle visited the residence at 528 East Milner Street and spoke with Minor. Minor confirmed Appellant had slept at the home during the morning hours of February 2, 2006. Minor also advised the officer Appellant had spent other nights at the residence. Minor indicated she and Appellant had been drinking during the evening hours of February 1, 2006 and the early morning hours of February 2, 2006. Minor stated she had had fifteen beers that night.
 {¶ 9} After speaking with Minor, the detective contacted Appellant at his place of employment and requested he come to the Alliance Police Department for an interview. During the interview, Appellant confirmed he spent the night at the East Milner Street residence with Minor. Appellant told the officer he and Minor had been at Minor's sister's house, playing cards and drinking. They returned to Minor's residence and went directly to bed. Appellant denied any allegations of sexual assault. Appellant provided the detective with the pair of boxers he had on at the time of the interview. Appellant told Det. Tittle they were the same boxers he was wearing earlier that day. Appellant *Page 5 
executed a consent to search and Det. Tittle collected a pair of boxers from the dirty clothes pile in Appellant's bedroom. Appellant also provided the police with a DNA sample.
 {¶ 10} Jennifer Creed, a criminologist with the Stark County Crime Lab, testified she examined the evidence provided to her by the Alliance Police Department for the presence of any semen, blood, and foreign hairs or fibers. During her analysis, Creed detected an elevated level of amylase, a digestive enzyme which is present in saliva, on the interior crouch of Amber's underpants. Creed performed a DNA typing and detected a very small amount of male DNA, but was unable to get a result from the sample in order to do a comparison. Creed explained, the large amount of female DNA found was possibly masking any male DNA which might have been present. As a result, Creed sent the material to Lab Corp. in North Carolina, to conduct additional analysis.
 {¶ 11} Shawn Weiss, the Associate Technical Director of the Forensic Identity Department of Lab Corp., testified he analyzed samples sent from the Stark County Crime Laboratory using the Y STR test method. Weiss explained this method does not point to a specific person, but rather the individual's paternal lineage. Weiss concluded with 95% confidence the DNA obtained from the saliva stain found on Amber's underwear matched Appellant's Y chromosome DNA profile, and Appellant could not be ruled out as a contributor to the male DNA found.
 {¶ 12} Myesha Elder testified, in 1999, when she was fourteen years old, Appellant was the best friend of her mother's boyfriend. Myesha recalled between 4:00 and 5:00am on December 14, 1999, Appellant entered her bedroom and asked for a blanket. Myesha noted Appellant stayed overnight "all the time". Tr. at 219. The girl *Page 6 
brought the blanket downstairs to Appellant, and the two sat together on the couch. Appellant pulled her down and climbed on top of her. Myesha then described how Appellant pulled her underwear to the side and placed his penis into her vagina. When asked if Appellant said anything, Myesha recalled his saying, "I thought you said you weren't a virgin." She stated she told him it hurt and told him to stop. On cross-examination, defense counsel asked Myesha why she told the 1999 Grand Jury her sexual encounter with Appellant was consensual then subsequently at the jury trial testified it was not consensual. Myesha admitted she had lied under oath during the Grand Jury testimony.
 {¶ 13} After hearing all the evidence and deliberations, the jury found Appellant guilty of rape as charged. The trial court sentenced Appellant to a period of incarceration of ten years.
 {¶ 14} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:
 {¶ 15} "I. THE TRIAL COURT ERRED IN ADMITTING OTHER ACT EVIDENCE WHICH WAS MORE PREJUDAIL [SIC] THAN PROBATIVE AND DENIED APPELLANT HIS RIGHT TO A FAIR TRIAL.
 {¶ 16} "II. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BY THE INTENTIONAL MISCONDUCT OF THE PROSECUTING ATTORNEY."
 I {¶ 17} In his first assignment of error, Appellant maintains the trial court erred in admitting other acts evidence. Appellant specifically takes issue with the testimony of Myesha Elder, arguing the incident involving that victim and the instant action lack *Page 7 
sufficient similarities to establish opportunity, preparation, and/or plan to commit the offense. Appellant submits, as a result, he was required to defend himself against two separate allegations.
 {¶ 18} Initially, we note the admission or exclusion of evidence lies within the sound discretion of the trial court. The trial court has broad discretion in determining the admissibility of evidence, and unless there is an abuse of discretion, the trial court's decision will not be disturbed. State v. Robb, 88 Ohio St.3d 59, 69, 723 N.E.2d 1019,2000-Ohio-275, quoting State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343. In order to find an abuse of discretion, the plaintiff bears the burden of demonstrating the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.State v. Adams (1980), 62 Ohio St. 2d 151, 157.
 {¶ 19} R.C. 2945.59 states:
 {¶ 20} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 21} Ohio Evid. R. 404(B) provides:
 {¶ 22} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, *Page 8 
however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 23} In State v. Adkins (July 24, 2002), Morrow Appellate No. CA-906, this Court affirmed a trial court's decision to allow evidence of other acts of sexual abuse to demonstrate a "unique identifiable plan of criminal activity," ruling the evidence was "probative of a common scheme, plan, intent or a modus operandi."
 {¶ 24} We find the trial court did not abuse its discretion in permitting Myesha Elder to testify about Appellant's sexual assault upon her. Such evidence showed Appellant's scheme, plan, motivation, and opportunity. Both victims were young girls, barely adolescent. Appellant was spending the night at the victims' homes, and had done so on numerous prior occasions. Appellant had relationships with a relative of each victim. In the instant action, Appellant was dating Amber's aunt. In Myesha's situation, Appellant was the best friend of her mother's boyfriend. In both instances, Appellant woke the girl early in the morning, lured her downstairs, and then laid on top of her on a couch while the rest of the members of the household were sleeping.
 {¶ 25} Based upon the foregoing, we find Appellant's argument not well taken and overrule his first assignment of error.
 II {¶ 26} In his second assignment of error, Appellant contends he was denied his right to a fair trial as the result of a prosecutorial misconduct.
 {¶ 27} When determining whether a prosecutor's conduct rises to the level of prosecutorial misconduct, an appellate court must decide whether the prosecutor's actions were improper, and, if so, whether the substantial rights of the defendant were *Page 9 
actually prejudiced. State v. Smith (1984), 14 Ohio St.3d 13, 14. Ultimately, the prosecuting attorney's trial conduct can only be made a ground for error on appeal if the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. Furthermore, "[i] solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v.Hill (1996), 75 Ohio St.3d 195, 204, recon. den., (1996),75 Ohio St.3d 1453. The appellant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza (1994), 71 Ohio St.3d 61,78-79, overruled on other grounds.
 {¶ 28} Counsel is afforded wide latitude during closing argument to present the most convincing position on behalf of his or her client. It is proper for the prosecution to comment on the evidence in closing argument and to state the appropriate conclusions to be drawn therefrom.State v. Draughn (1992), 76 Ohio App.3d 664, 670. The prosecution may urge its theory of what the evidence indicates, so long as it does not mislead the jury. State v. Malone (Sept. 24, 1986), 9th Dist. Nos. 12533 12542.
 {¶ 29} Appellant specifically takes issue with statements made by the prosecutor during closing remarks. The prosecutor's closing argument included the following:
 {¶ 30} "Prosecutor: When [Amber] went to the hospital she said this is what happened. Anal penetration, vaginal penetration, digital penetration.
 {¶ 31} "It was the same that she told you here today. Myesha Elders' testimony, you can only use it, as the judge said, for the limited purpose of the opportunity, preparation and plan to commit this. I would ask you for that purpose to consider the similarities. I would ask you to consider that Myesha was 14 and Amber was 12. The *Page 10 
Defendant created an opportunity for himself to be in the home overnight to be sleeping in the same house where young girls were present. * * *
 {¶ 32} "With little supervision. He knew mom's boyfriend in Myesha's case. He was dating Lisa Minor in Amber's case. In each case he woke up in the very early hours of the morning. He woke the child up, took them down to the couch. I would ask you to consider for that purpose. * * *" Trial Tr. Vol. 2 at 41-42.
 {¶ 33} Reviewing the prosecutor's statement in the context in the entire trial, and not in isolation, we find the prosecutor properly informed the jury of how they could consider Myesha Elder's testimony in light of Amber's testimony. Having found in assignment of error number one, supra, the trial court did not abuse its discretion in allowing the introduction of other acts evidence, we find the prosecutor was free to comment what the evidence showed and what reasonable inferences could be drawn therefrom. The prosecutor herein did just that. Although she may have misstated portions of the witnessess' testimony (for example, Appellant taking the victim downstairs when the actual testimony was that the victim either was already downstairs or came downstairs), such is not of enough significance to find Appellant was prejudiced by these "misstatements". The testimony of both victims revealed they were downstairs either having been asked by Appellant to bring him something or being followed downstairs by Appellant when the offenses occurred. The closing remarks of a prosecutor are not testimony and the jury in the instant action was advised of the same by the trial court.
 {¶ 34} Assuming, arguendo, the prosecutor's remarks were improper, we nevertheless find Appellant has failed to show how he was prejudiced thereby. *Page 11 
 {¶ 35} Appellant's second assignment of error is overruled.
 {¶ 36} The judgment of the Stark County Court of Common Pleas is affirmed.
 Hoffman, P.J., Farmer, J., and Edwards, J., concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellant.
[1] Michelene Hughes and Minor are also sisters. *Page 1