[Cite as *State v. Mumford*, 2019-Ohio-282.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P.J |
| Plaintiff – Appellee | Hon. William B. Hoffman, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2018-0021 |
| JOSHUA SLADE MUMFORD | |
| | |
| Defendant – Appellant | O P I N IO N |


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Muskingum County Court of Common Pleas, Case No. CR2017-0323 |
| | |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 28, 2019 |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant |
| | |
| D. MICHAEL HADDOX | KRISTOPHER K. HILL |
| Prosecuting Attorney | 17 N. Fourth Street |
| Muskingum County, Ohio | P.O. Box 340 |
| | Zanesville, Ohio  43702-0340 |
| BY: GERALD V. ANDERSON, II | |
| Assistant Prosecuting Attorney | |
| 27 North Fifth Street – P.O. Box 189 | |
| Zanesville, Ohio  43702-0189 | |

*Hoffman, J.*

{¶1}   Defendant-appellant Joshua Slade Mumford appeals his convictions and sentence entered by the Muskingum County Court of Common Pleas, on one count of domestic violence and one count of abduction, following a jury trial.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On September 14, 2017, the Muskingum County Grand Jury indicted Appellant on one count of domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree; and one count of abduction, in violation of R.C. 2905.02(A)(2), a felony of the third degree.  The charges arose out of a July 17, 2017 incident involving Brittany Mumford, Appellant's estranged wife.  Appellant entered a plea of not guilty to the Indictment.

{¶3}   Prior to trial, Appellant filed a motion in limine, seeking to exclude, inter alia, any evidence of prior allegations of domestic violence and/or abuse including prior convictions[1] and civil protection orders.  The trial court conducted a hearing on the motion. The parties mainly focused on two incidents of Appellant's prior bad acts; the first involved Appellant and Mumford at their residence, and the other was an incident involving their child, which occurred at a mall.  These two events served as the catalyst for Mumford's decision to leave Appellant.

{¶4}   At the hearing, the prosecutor advised counsel for Appellant and the trial court he did not intend to introduce facts contained in the police reports provided to Appellant in discovery, or evidence of any prior incidents involving Appellant and

---

[1] Appellant stipulated to a prior conviction of domestic violence which was an element of the domestic violence offense charged herein.

Mumford's child.  However, the prosecutor indicated he did intend to introduce evidence of events which occurred contemporaneously or nearly contemporaneous with the July 17, 2017 incident.  The prosecutor explained, "I'm attempting to keep it close in context to when this incident happened.  She's leaving him because of these incidents and that is the precipitation of this incident." Tr. December 13, 2017 Motion Hearing at 9.  The trial court advised the parties it would allow the testimony "[a]t this point in time", until it heard "the foundation in regards to time and location and what happened." Tr. at 10-11.

{¶5}     The matter proceeded to trial on February 27, 2018.  Following voir dire, the trial court, outside the presence of the jury, reviewed the parties' agreement with respect to the motion in limine.  The prosecutor reiterated he was not going to discuss previous incidents, but expressed concerns about his ability to keep Mumford from disclosing prior incidents of Appellant abusing their son.  The prosecutor noted Mumford was difficult to control, and he wanted the trial court and defense counsel to know he was making a good faith effort to do so.  The prosecutor further stated he would not use evidence of previous protection orders and prior convictions except for the one to which Appellant stipulated.

{¶6}     Mumford testified she and Appellant were married on November 23, 2013, and have a three year old son together.  Mumford decided to leave Appellant in June, 2017.  She left with their son while Appellant was at work, but was unable to take most of her belongings.  Mumford noted Appellant was unhappy with her decision to leave, constantly calling and threatening her.

{¶7}     Mumford explained she made arrangements to meet Appellant during his lunch hour on July 17, 2017, in order to collect her belongings.  Jayleen Bennett, Mumford's friend, drove her to Genesis Hospital, where Appellant was working

construction. Mumford asked Bennett to go to McDonald's to get lunch for Appellant so she could speak with Appellant in private. Mumford recalled Appellant begged for forgiveness and pleaded with her to take him back. Mumford continually told Appellant their relationship was over and she was "done". Mumford remarked, "Like, he hurt -- he blacked our child's eye." Trial Tr. Vol. I at 245. Counsel for Appellant objected and moved for a mistrial. Outside the presence of the jury, the trial court admonished Mumford and instructed her not to make further comments about events unrelated to the charges. The trial court gave a curative instruction to disregard Mumford's comment about injury to their child. The prosecutor continued its examination of Mumford.

{¶8} Mumford stated Appellant refused to return her clothes, threatening to burn them. Mumford left when Bennett returned with Appellant's lunch. She and Bennett picked up Mya Rush, Mumford's younger sister, and proceeded to a Gabe's store to purchase clothes for Mumford. The three had been shopping for approximately 15 minutes when Rush saw Appellant enter the store. Appellant found Mumford, grabbed her by the arm, and demanded she come with him or "it won't be good for you." Tr. at 252. Mumford instructed Bennett and Rush to stay in the store and to come get her or call somebody if she was not back in five minutes.

{¶9} Appellant grabbed Mumford by her elbow and escorted her out of the store. Mumford felt threatened and scared. Appellant clutched Mumford's hand, causing it to become numb and sore, and her palm to tingle. Once outside, Appellant led Mumford to her vehicle, which he had been using, and instructed her to get into the car. Appellant begged Mumford to take him back, but she refused and told him she was "done". Appellant grabbed Mumford by the hair, pulled her toward him, and tried to kiss her.

Mumford resisted and tried to push him away, but Appellant persisted, hurting Mumford in the process.

{¶10} Bennett arrived at the vehicle and told Appellant to let Mumford out of the car. Mumford eventually managed to exit the car and make her way to Bennett's vehicle. As Mumford made her way to Bennett's vehicle, Appellant blocked her efforts, standing in her way and pushing her. Bennett drove away with Appellant in pursuit. Each time the cars came to a red light, Appellant exited his vehicle and pounded on the passenger's side of Bennett's car, screaming at Mumford to get out. Mumford instructed Bennett to drive to the police station. Appellant followed Mumford inside, but immediately left. Mumford left without speaking to an officer. However, when Appellant again began to follow Mumford, Bennett, and Rush, they returned to the police station.

{¶11} Mumford spoke with Patrolman Steven Carles. When Mumford's boyfriend arrived at the police station, Ptl. Carles' attitude and demeanor changed and he began to question Mumford about the crime of adultery. The prosecutor then asked Mumford, "Did you get questioned about why you dropped TPO's in the past, the protection orders?" Tr. at 270. Defense counsel asked to approach and, after a short discussion, moved for a mistrial. The prosecutor recognized his error and agreed to move off that line of questioning. The trial court denied Appellant's request for a mistrial. The trial court instructed the jury "anything implied in a question that was not answered is not evidence and is to be completely disregarded by you." Tr. at 275.

{¶12} The prosecutor continued his direct examination of Mumford. The witness recounted, following the July 17, 2017 incident, she sought a protection order through the domestic relations court. During the process, Mumford obtained a copy of the police

report.  Mumford testified Patrolman Carles "left pretty much everything out of the report." Tr. at 276.  Mumford met with Patrolman Carles and requested he supplement his report. After the patrolman failed to amend the report, Mumford contacted his supervisor. Mumford subsequently met with Patrolman Carles and gave him another statement. Rush and Bennett accompanied Mumford to the police station.  They also provided statements to Patrolman Carles.

**{¶13}** After hearing all the evidence and deliberating, the jury found Appellant guilty as charged.  Appellant filed a motion for new trial, which the trial court denied via judgment entry filed April 12, 2018.  The trial court sentenced Appellant to an aggregate period of incarceration of four years.

**{¶14}** It is from his convictions and sentence Appellant appeals, raising as his sole assignment of error:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR MISTRIAL AND NEW TRIAL UNDER CRIM. R. 33.  APPELLANT SHOULD HAVE BEEN GRANTED A MISTRIAL ON TWO SEPARATE OCCASIONS WHEN HIGHLY PREJUDICIAL MATERIAL WAS INJECTED INTO THE TRIAL, TWICE, IN VIOLATION OF THE COURT'S ORDER *IN LIMINE.*

I.

**{¶15}** In his sole assignment of error, Appellant contends the trial court erred when it denied his motion for mistrial and new trial.  Appellant points to two incidents during

Mumford's direct examination which warranted a mistrial. The first occurred when Mumford, explaining why she decided to finally end her relationship with Appellant, commented, "Like, he hurt -- he blacked our child's eye." Trial Tr. Vol. I at 245. The second instance followed when the prosecutor questioned Mumford whether Patrolman Carles asked her why she had dropped TPOs against Appellant in the past.

{¶16} A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened. *State v. Reynolds*, 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497 (1988). The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9 (1991). When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793–794 (1992).

{¶17} During her direct examination, Mumford testified about her decision to meet with Appellant on July 17, 2017, as follows:

> MR. LITTLE (PROSECUTOR): At some point on July 17th, did you end up contacting [Appellant] to get your stuff back?
>
> MUMFORD: Yes.
>
> MR. LITTLE: Okay. Did he still have your car at that point?
>
> MUMFORD: Yes.
>
> MR. LITTLE: Okay. Try and, if you can, explain to the jury, you know, where was he working, how – how was that arrangement made, if you can.

MUMFORD: He was working at Genesis Hospital doing construction. And we had texted, and he asked me to come there for his lunch break to talk about getting back together. And so I ended up going there.

Jayleen, a family friend, took me there. * * * [Appellant] basically just begged me to forgive him. He was down on his hands and knees holding on to my feet asking for forgiveness. I said no, I just wanted my stuff back.

Eventually, a conversation led to him not having lunch * * * I sent Jayleen to McDonald's to get him a sweet tea and a cheeseburger.

So him and I continued to talk when she was gone. And he just kept begging me to forgive him, and I just said I was done. Like, he hurt -- he blacked our child's eye.

Trial Tr. 244-245.

{¶18} Defense counsel objected and moved for a mistrial. Outside the presence of the jury, the trial court admonished Mumford and instructed her not to make further comments about events unrelated to the charges. The trial court gave a curative instruction to the jury to disregard Mumford's comment regarding Appellant blacking their child's eye.

{¶19} We find the trial court did not abuse its discretion in denying Appellant's motion for a mistrial at this point in the proceedings because the court admonished Mumford and advised her not to make any further comments about unrelated events, and instructed the jury to disregard Mumford's answer. Juries are presumed to follow and

obey the instructions given to them by the trial court. *See, Parker v. Randolph* (1979), 442 U.S. 62, 74-5, 99 S.Ct. 2132, 60 L.Ed.2d 713; *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1.

{¶20} The prosecutor subsequently began to question Mumford regarding changes in Patrolman Carles' demeanor and attitude towards her, specifically asking, "Did you get questioned about why you dropped TPO's in the past, the protection orders?" Trial Tr. at 270. Defense counsel objected. After stating his objection, defense counsel moved for a mistrial. The trial court indicated it would deny the motion for mistrial at that time, explaining, "This isn't a question that was not permitted under the agreement that had been reached between counsel, and that the stuff that was provided in the discovery was not going to be brought up. * * * The way the question was asked I – it just implies that there's some kind of other stuff without even getting in to specifics. That's what we're trying to stay away from." Trial Tr. at 272. When the jury returned to the courtroom, the trial court sustained the objection and instructed the jury "anything implied in a question that was not answered is not evidence and is to be completely disregarded." Trial Tr. at 275. We find the trial court did not abuse its discretion in denying the motion for mistrial regarding this testimony.

{¶21} Appellant maintains the cumulative effect of "[t]he injected material" was "incredibly incendiary and highly prejudicial", thereby tainting the minds of the jury. Appellant concludes, as a result, the trial court erred in failing to grant his motion for a mistrial. Appellant relies on this Court's decision in *State v. Weber*, Stark App. No. 97 CA 00245, 1998 WL 517868 (August 10, 1998), in support of his position.

{¶22} In *Weber*, the witness, the appellant's live-in girlfriend, testified she had

attended an Al-Anon meeting on the evening of the incident, prior to discovering the appellant passed out in his vehicle. *Id.* at *4. The prosecutor then asked, "You were with Al-Anon?", and the witness responded, "That's to help friends and family of alcoholics." *Id.* Later on in the proceedings, the responding officer testified regarding the effect of appellant's refusal to submit to a urine test. *Id.* at *5. As a result, the jury again heard evidence the appellant had a problem with alcohol and had a prior conviction as a result of that problem. *Id.*

**{¶23}** This Court found, although the prosecutor's comment and the witness's response thereto were highly prejudicial and had little relevance, the trial court did not err in denying the appellant's motion for a mistrial at that point in the proceedings because the court sustained his objection and instructed the jury to disregard the witness's answer. *Id.* at *4. However, we concluded the combined effect of the statements of the appellant's girlfriend and the officer was "sufficiently prejudicial to undermine appellant's right to a fair trial"; therefore, warranting a reversal of the appellant's conviction. *Id.* at *5.

**{¶24}** We find the combined effect of the two statements upon which Appellant premises his assignment of error was not sufficiently prejudicial to undermine his right to a fair trial as was the situation in *Weber*. Mumford made only one inappropriate comment and such occurred at the beginning of an extensive direct examination. In addition, Mumford did not respond to the prosecutor's inquiry, "Did you get questioned about why you dropped TPO's in the past, the protection orders?" Further, the trial court gave a curative instruction each time.

**{¶25}** Based upon the foregoing, Appellant's sole assignment of error is overruled.

**{¶26}** The judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Hoffman, J

Gwin, P.J. and

Baldwin, J. concur