[Cite as *Broadview Hts. v. Thomas*, 2023-Ohio-4645.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| S/O, CITY OF BROADVIEW HEIGHTS, | : | |
| Plaintiff- Appellee, | : | |
| | | No. 112312 |
| v. | : | |
| ROSS W. THOMAS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 21, 2023

Criminal Appeal from the Parma Municipal Court
Case No. 21CRB02239

### *Appearances:*

Vincent Ruffa, Joseph Grandinetti, and Dean DePiero, *for appellee.*

Darren L. Meade, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Ross Thomas appeals his conviction from the Parma Municipal Court for theft. Because we do not find that Thomas's claim of prosecutorial misconduct caused an unfair trial, we affirm his conviction.

PROCEDURAL HISTORY AND RELEVANT FACTS

{¶ 2} Ross Thomas was charged with one count of theft by deception in violation of R.C. 2913.02(A)(3), a misdemeanor of the first degree, for taking a gold coin at a coin show held on July 10, 2021, in Broadview Heights, Ohio. Thomas was found guilty after a jury trial.

{¶ 3} At trial, the prosecutor for the city of Broadview Heights presented testimony that Thomas took a coin from another dealer's table and left money that amounted to a fraction of the value of the coin. After being confronted about the coin, Thomas refused to show the dealer or the coin show's director the coin and said he purchased the coin. Laura Cole testified that she went to the show to help her partner, Brandon Marques, a coin dealer. Marques had coins for sale at the show. He kept the coins in envelopes with prices written on the envelopes. The envelopes were displayed in books at a vendor table. During the first hour of the show, Cole watched Marques's table while he was away. Thomas approached the table and asked Cole about a particular coin. Cole said that she asked Thomas to wait for Marques to return regarding his questions. When Cole wasn't looking, Thomas left $50 in currency on the table and left the area.

{¶ 4} James Baird testified that he also sold coins at the coin show at a table next to Marques. He noticed that Cole was watching Marques' table for him. Baird said that Thomas came to his table and showed him a gold coin that Thomas said he bought for $50. Baird didn't think that price was possible. After Thomas left Baird's table, Cole came to him and asked if Thomas showed him a gold coin. Baird knew

the coin's value was between $800 and $1,200, depending on the condition. Baird stated that when he saw the coin, he didn't see a marked price and that Thomas did not elaborate on how he got the coin for $50.

{¶ 5} Cole testified that she approached Thomas, and he would not show her the coin and ignored her. Marques testified that he returned to his table and Cole told him what happened. Marques looked through his books and found that his most valuable coin, priced at $1,150, was missing. Marques found and confronted Thomas, telling Thomas that he believed Thomas stole a coin and asked to see the coin. Thomas would not take the coin out of his pocket. Marques said there was no way the coin was $50 and told Thomas to show him that the coin was priced at $50, stating Thomas could keep the coin if it was. Thomas would still not take the coin out of his pocket. The director of the coin show, John Rebic became involved, and Marques testified that Thomas would not show him the coin either. After Marques called the police, Marques saw Thomas leave the show as quickly as possible.

{¶ 6} During Marques's cross-examination, a video that was made by Thomas at the coin show was played. Marques identified his voice for the jury. The video included Thomas's interaction with Marques and with John Rebic.

{¶ 7} John Rebic testified he was approached by a security guard about a gold coin. Rebic talked to Thomas and asked to see the coin because he was surprised a gold coin would be priced at $50. Rebic stated that there was no way a gold coin would be priced at $50. Thomas's video was played during Rebic's testimony. On the video, Thomas was heard telling Rebic that Rebic can kick Thomas out of the

show if he had to, but he would not give the coin back. Rebic further testified that during coin shows, no one leaves money on a table to buy coins, especially between vendors.

{¶ 8} Without a resolution of the dispute between Marques and Thomas, the police were called. Once the decision to call the police had been made, both Rebic and Baird testified that Thomas packed up his belongings, went to his car, and sped from the parking lot of the venue before police arrived.

{¶ 9} During Marques's testimony, he was shown a picture of the coin in an envelope with a price of $50 written on it. Marques denied pricing the coin at that amount and testified he did not write the price, noting discrepancies in the envelope around the coin and way the price was written. Marques also identified pictures of his coin books to identify his handwriting and the manner in which he priced his coins.

{¶ 10} Thomas testified at trial. At the onset of his testimony, Thomas stated that he is a single dad with two children, is an Eagle Scout, and is an avid coin collector. He said he works as a realtor and property manager. Thomas's testimony was in direct opposition to the prosecution's witnesses. Thomas testified that he purchased a gold coin from Cole and got a bargain. Thomas explained that Cole was at Marques's table, and he asked her to see the coin. He said he asked about the price and that Cole verified the coin was priced at $50. Thomas said he handed her $50 and bought the coin.

{¶ 11}Thomas testified that at coin shows bargains could be found and he recounted several bargains he found at previous shows. Thomas denied Cole and Marques's testimony that he took the coin. Rather, Thomas identified the picture of the coin and envelope and indicated that it was priced at $50 and denied altering the pricing on the envelope. Thomas did not dispute that he would not show Rebic the coin he purchased, explaining that to do so would have been against his values. He also explained that he left the show before police arrived because he was worried about the police confiscating all his belongings that he brought to the show.

{¶ 12} During closing argument, the prosecutor asked that the jury consider that actions speak louder than words and asked the jury to consider Thomas's acts of taking the coin and leaving money, his failure to show the coin to Rebic when asked, and his departure when police were called as evidence of Thomas's guilt. The prosecutor asked the jury to compare the testimony between the witnesses and stated that the situation was easily resolved if Thomas would have showed Rebic the coin. In asking the jury to compare the testimony of the witnesses, the prosecutor stated:

> PROSECUTOR: You heard the testimony. You — and I want you to analyze the difference between when someone like John Rebic testified, and someone like Ross Thomas testified. Everything John Rebic said, everything, no doubt in my mind that guy is as good as gold.
>
> DEFENSE COUNSEL: I'm going to object to the Ross — his characterization of Ross [inaudible].
>
> TRIAL COURT: Overruled. This is closing argument it's not evidence.

{¶ 13} The prosecutor then contrasted the testimony, discussed the value of the coin, and noted no witness stated that the gold coin would be priced at $50 as claimed. The prosecutor discussed the pictures of the coin produced by Thomas against the pictures of how Marques marked his coins. In addition to this line of argument, the prosecutor characterized Thomas's defense in the following manner:

> THE PROSECUTOR: * * * You know, one of the things that their defense is, is, no, I didn't steal, I just took advantage of this person. That's — that's their defense, right? I didn't steal it. I just happened to take advantage of her and he's talking, I'm Mr. Eagle Scout. I'm Mr. Single Dad. Why do you think they're saying that?

{¶ 14} After this statement, the trial court overruled an objection. The prosecutor discussed Thomas's testimony, noting that the jury would be able to weigh the other witnesses' credibility against Thomas's. The prosecutor described Thomas's testimony, arguing:

> THE PROSECUTOR: * * * And boy, there are a lot of leaps you're going to have to make if you want to believe that. That the coin was mistakenly marked wrong, that the girl who testifies, I don't handle money, I never do, I never do it, just that one time that day decide to do it, that Laura Cole was totally lying, that James Baird was a liar, that Rebic was being dishonest, that Marques was being dishonest.
>
> Everybody was lying, except for the guy who's saying, hey, I'm not stealing, I was just trying to distort [sic] this really, really, really, really good deal of this person. That's okay.
>
> And when you use reason and plain old common sense, we take a step back. You're going to hold one conclusion, that he's guilty, that he took this coin, he deceived Laura Cole, Brandon Marques, he's playing games and perhaps maybe he's diluted [sic] himself to believe that he himself was in the right.

But collectively as a jury, you need to analyze these actions. Everything he did screams, dishonestly, It screams dishonestly, you can't believe a word he said. Just think when you're deliberating, some of the lies he gave.

{¶ 15} In its instruction to the jury, the trial court stated:

The evidence does not include the complaint, the opening statements, or the closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence.

* * *

Closing arguments of counsel are designed to assist you. They are not evidence.

LAW AND ARGUMENT

{¶ 16} Thomas raises one assignment of error, which reads:

The State of Ohio committed reversible error through prosecutorial misconduct, specifically by making multiple disallowable and unfairly prejudicial statements throughout the closing argument.

{¶ 17} Thomas argues he did not receive a fair trial because the prosecutor interspersed personal opinions in the closing argument and gave admonitions to the jury that they had little to deliberate because the prosecutor told the jury which witnesses to believe and what to think. Thomas argues specifically that the prosecutor's statements regarding Thomas's career and experience were unnecessary and an example of an "outlandish remark." Thomas also argues the prosecutor's argument served to inflame the passions of the jury where the prosecutor asked the jury to consider Thomas to be "a guy who just took advantage of a pregnant woman." Further, he argues that the prosecutor vouched for Rebic's testimony and inserted his own opinion when he argued Thomas was deluding

himself to believe he was in the right and stating Thomas's action "scream dishonesty." The city argues that the prosecutor's argument and remarks were not improper and did not amount to misconduct or result in an unfair trial.

{¶ 18} Allegations of prosecutorial misconduct in closing argument are reviewed to determine "'whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 156, quoting *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). A trial should only be reversed on the grounds of prosecutorial misconduct "if the effect of the misconduct 'permeates the entire atmosphere of the trial.'" *State v. Gibson*, 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, ¶ 99, quoting *State v. Tumbleson*, 105 Ohio App.3d 693, 699, 664 N.E.2d 1318 (12th Dist.1995). "'The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting, *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 19} A prosecutor has wide latitude in closing argument and is free to comment on what the evidence has shown and reasonable inferences that can be drawn from that evidence. *State v. Harris*, 2017-Ohio-2751, 90 N.E.3d 342, ¶ 84 (8th Dist.).

{¶ 20} Arguments that are excessively emotional that tend to inflame a jury's sensibilities are improper. *McAlpin* at ¶ 156. "It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to

the guilt of the accused." *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). When reviewing a claim of prosecutorial misconduct in closing argument, the appellate court should consider "the nature of the remarks, whether an objection was made by counsel, whether corrective instructions were given by the court, and the strength of the evidence against the defendant." *Harris* at ¶ 84.

{¶ 21} Thomas argues that the prosecutor vouched for Rebic's testimony by stating it was "as good as gold." We agree. However, that comment was isolated and the trial court immediately noted to the jury that the statement was not evidence. Additionally, the prosecutor also reminded the jury during his closing argument that it was to determine the credibility of the witnesses. As to the complaint that the prosecutor improperly discussed Thomas's statements about being an Eagle Scout and his profession, we do not find statements regarding Thomas's testimony about himself and his accomplishments to be improper.

{¶ 22} The prosecutor described Thomas's actions as dishonest, arguing that those actions "screamed dishonesty" and his testimony was to be considered full of lies. A prosecutor may argue that the evidence suggests the conclusion that a defendant was lying, scheming, has ulterior motives for doing so. *State v. Draughn*, 76 Ohio App.3d 664, 670, 602 N.E.2d 790 (5th Dist.1992.) However, a prosecutor cannot directly call a defendant a liar or state a belief that the defendant was lying. *Id.* We recognize that a prosecutor has wide latitude in closing argument and that "[w]hen a prosecutor states in closing argument that a defendant is lying and when that statement is based on evidence within the record and not an expression of

personal belief or opinion, this court has found such statement to be proper." *State v. Smith*, 8th Dist. Cuyahoga No. 111870, 2023-Ohio-1670, ¶ 45 (citations omitted.) Given the testimony from Cole, Baird, Rebic, and Marques as to what Thomas did and his actions, the prosecutor's remarks, although bordering on unacceptable argument, were not wholly improper.

{¶ 23} We further find the prosecutor's comment that Thomas's defense was that he got a bargain by taking advantage of a "pregnant woman" to not be so inflammatory as to cause the jury to be improperly swayed. As to the allegations that the closing argument was improper because it told the jury what to think, we cannot say that in this case, the prosecutor's closing arguments usurped the role of the jury or relieved the jury of its duty to assess the credibility of the witnesses.

{¶ 24} We note there has been no complaint that the trial court failed to properly instruct the jury. Further, when there was an objection during argument, the trial court specifically stated that closing arguments were not to be considered evidence. In reviewing the nature of the remarks, we note the prosecutor's argument generally contrasted the city's witnesses' testimony against Thomas's testimony, suggesting Thomas's testimony and explanations were incredible. In regard to the strength of the state's case, the state presented several witnesses whose testimony described Thomas's actions in taking the coin; leaving a small amount of money; refusing to show the coin and its pricing to Cole, Marques, and Rebic; and leaving before police arrived. Thomas stated he purchased the coin and gave explanations for his actions. In addition to the testimony, the jury had a recording of Thomas's

interaction with Rebic. Further, the jury was able to contrast the picture of the coin and its pricing as supplied by Thomas against images of Marques's other coins.

{¶ 25} Having reviewed the prosecutor's closing argument in its entirety within the context of the entire trial, we cannot say that the closing argument was of such impropriety that it permeated the entire atmosphere of the trial that would necessitate a finding the trial itself was unfair.

{¶ 26} The sole assignment of error is overruled.

CONCLUSION

{¶ 27} Thomas was convicted of theft after a jury trial. The conviction was based on both witness testimony and other evidence. A prosecutor has wide latitude in making a closing argument. In this case, the prosecutor sought to contrast the prosecution witnesses' testimony against Thomas's testimony to suggest Thomas's testimony and his explanations for his actions were incredible. Although the prosecutor improperly vouched for the credibility of a witness, we cannot say that the closing argument was of such impropriety that it permeated the entire atmosphere of the trial to necessitate a finding the trial was unfair. Because we do not find that the prosecutor's closing argument prejudicially affected Thomas's substantial rights, we affirm the judgment of the trial court.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, A.J., and
LISA B. FORBES, J., CONCUR