[Cite as *State v. Alexander*, 2011-Ohio-6784.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00096 |
| WILLIAM L. ALEXANDER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
                              Court of Common Pleas, Case No.
                              2010CR1397

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       December 27, 2011

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOHN FERRERO                        MATTHEW PETIT
Stark County Prosecutor             116 Cleveland Avenue North, Ste. 808
110 Central Plaza S.                Canton, OH  44702
Canton, OH  44702

*Gwin, P.J.*

**{1}** Defendant-appellant William L. Alexander appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count of robbery a felony of the second degree in violation of R.C. 2911.02(A)(2). Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{2}** On August 31, 2010, during the mid-afternoon hour Rebecca Brumback was walking from her apartment to the corner store. As she was walking, she heard someone running up behind her. This person ran past her several feet, and then stopped and turned around to confront Ms. Brumback. Ms. Brumback recognized this man from the neighborhood, and knew him as "Will." Ms. Brumback later identified this man as appellant. Ms. Brumback testified that she had seen him in the neighborhood over the past three or four years, and had even casually talked with him.

**{3}** Having stopped, appellant approached Ms. Brumback and struck her, knocking her to the ground. Appellant told her, "My brother is doing four years because of you, bitch!" Appellant then continued his assault on Ms. Brumback. Because of this beating, Ms. Brumback suffered bruises on her face, and had a tooth knocked through her lip, all of which caused bleeding. A man whom Ms. Brumback knew simply as "Fred" came upon this beating and told appellant to stop. Appellant did stop, but he then rifled through Ms. Brumback's pockets before leaving. Appellant took some $30 in cash, as well as a set of keys; however, he tossed the keys back at Ms. Brumback.

**{4}** Ms. Brumback reported the attack immediately to the police. The police took photos of her injuries, and investigated whom this "Will" might be. Based upon this

investigation, the police put together a photo line-up for Ms. Brumback to review. While examining this photo line-up, Ms. Brumback immediately identified appellant's photograph as the man who attacked and robbed her. Ms. Brumback testified that she felt that appellant was referring to an individual named Aaron Kyles when he accused her of putting "his brother" away for four years. In the neighborhood, appellant and Kyles were close friends and held themselves out as brothers. Ms. Brumback did not actually know whether they were full brothers, half brothers, or not related at all. She only knew that they held themselves out as brothers.

{5}     Ms. Brumback admitted that she had a criminal record. She had convictions for complicity to theft, forgery, receiving stolen property, theft, and misuse of a credit card. She also had a 2007 conviction for domestic violence. Ms. Brumback served time in prison for some of these offenses, and was granted probation for others. At the time of trial, she was no longer on parole or probation.

{6}     Kori Porter testified that appellant is the father of her child. She testified that appellant arrived at her home on August 31, 2010 at 1:00 p.m. She was able to recall this incident because the appellant typically arrived at her home to visit her in the evening. A friend dropped the appellant off at Ms. Porter's home. The appellant spent the night with Ms. Porter. Ms. Porter testified that appellant did not have any "blood brothers." Ms. Porter did not know anyone named Aaron Kyles. Ms. Porter had never been in trouble before nor had she ever been to a court proceeding.

{7}     In 2010, William Leroy Alexander was charged by indictment with one count of robbery. The case proceeded to trial by jury in the Stark County Court of Common Pleas, with the first trial ending in a mistrial due to a hung jury.

{8}     The case was retried before another jury, which found appellant guilty as charged. The trial court thereafter sentenced him to a prison term of five years.

{9}     Appellant has timely appealed raising the following three Assignments of Error:

{10}    "I. THE TRIAL COURT'S FINDING OF GUILTY IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{11}    "II. THE TRIAL COURT ERRED IN ARBITRARILY FINDING THAT THE OFFICER WAS AVAILABLE AND DILIGENT EFFORTS WERE NOT MADE TO PROCURE HIS ATTENDANCE PURSUANT TO EVIDENCE RULE 804 AND IN DENYING THE APPELLANT'S MOTION FOR A MISTRIAL.

{12}    "III. THE APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."

I.

{13}    In his First Assignment of Error, appellant argues that his conviction is based upon insufficient evidence and is against the manifest weight of the evidence. We disagree.

{14}    Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.*;* see also *McDaniel v. Brown* (2010), —— U.S. ——, 130 S.Ct. 665, 673, 175 L.Ed.2d 582

(reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017 at ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720 at ¶ 68

{15} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386-387, 678 N.E .2d 541, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997–Ohio–355, 684 N.E.2d 668. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211.(Internal quotation marks omitted). However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* supra 78 Ohio St.3d at 387. (Internal quotation marks and citations omitted). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

{16} In the case at bar, appellant was convicted on one count of robbery. R.C. 2911.02(A)(2) provides, "No person, in attempting or committing a theft offense * * * shall do any of the following: * * *(2) Inflict, attempt to inflict, or threaten to inflict physical harm."

{17} In the case at bar, Ms. Brumback testified that appellant punched and kicked her. Ms. Brumback further testified that appellant went through her pockets and

removed thirty dollars in cash. Photographs of her injuries were admitted into evidence during appellant's jury trial.

{18} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that a robbery occurred. Viewing this evidence linking appellant to these offenses in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of robbery. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support appellant's conviction.

{19} "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.

{20} Although appellant cross-examined the witnesses in an attempt to show the jury that they could not believe Ms. Brumback, and further presented an alibi, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.

**{21}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003- Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke,* Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.

**{22}** In addition, the jury could reasonably have decided to believe the victim rather than appellant's alibi witness. The jury is able to observe the witnesses testify and can evaluate body language, voice inflection, and facial expressions. These are valuable tools for assessing credibility; tools that are not available to an appellate court working from the record alone. As such, a jury's assessment of credibility is entitled to considerable deference. See *Thompkins,* supra at 390. Although appellant presented an alibi concerning his whereabouts on the day of the crime, the jury must consider all of the evidence presented by the state as well as other defense witnesses in determining the validity of the alibi. In doing so in this case, we do not find the jury lost its way in

reviewing the conflicting evidence and finding appellant guilty of robbery. See, *State v. McCall* (Oct. 10, 2001), Muskingum App. No. 01CA23.

**{23}** After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the conviction. The jury did not create a manifest injustice by concluding that appellant was guilty of the crime charged in the indictment.

**{24}** We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.

**{25}** Appellant's First Assignment of Error is overruled.

II.

**{26}** In his Second Assignment of Error appellant challenges the trial court's ruling on his efforts to introduce the prior testimony of the investigating officer Detective William Adams given during his first jury trial. We disagree.

**{27}** In the case at bar, the investigating officer testified during appellant's first jury trial. During the appellant's subsequent re-trial, the witness had been subpoenaed by the State, but was not called to testify because the officer was on medical leave. Appellant did not subpoena this witness as a defense witness. Appellant sought permission to present a transcript of Detective Adams' testimony from appellant's first jury trial. The trial court overruled appellant's request.

**{28}** Evid.R. 804(B)(1) permits the admissibility at trial of former testimony taken at a previous trial upon a showing that the witness is unavailable despite reasonable efforts made in good faith to secure his presence at trial. *State v. Keairns* (1984), 9 Ohio St. 3d 228, 460 N.E. 2d 245, paragraph two of the syllabus. In the case

at bar, we note that appellant is the party who sought to introduce the former testimony. As such, there can be no violation of the Confrontation Clause. Any such objection has been waived. *State v. Pasqualone*, 121 Ohio St.3d 186, 902 N.E.2d 270, 2009-Ohio-315 at ¶14. Therefore, "unavailability" was the only issue for the trial court to decide.

{29} In the case at bar, when the state rested without calling Detective Adams to testify, appellant's counsel discovered that Detective Adams was on medical leave. Counsel for appellant then requested to present evidence through Detective Les Baroni to establish that Detective Adams was on medical leave and therefore unavailable to testify. In responding to inquiries by the trial court, appellant's counsel admitted that he had not issued a subpoena for Detective Adams' appearance at trial, and had not made any effort to ascertain whether he would be available to testify. Only after the state rested and the court granted a noon recess for lunch did counsel for appellant discover information about Detective Adams' medical condition. Upon inquiring of the prosecution, the trial court ascertained that Detective Adams had shoulder surgery, but was ambulatory and conversant. Counsel for the state informed the trial court that Detective Adams was able to be contacted, had in fact been to the police station that day to check on his cases, and had talked with the prosecutor about testifying. The prosecutor told Detective Adams that he would not use him at trial, having changed his trial strategy. Appellant simply ascertained over the lunch hour recess that Detective Adams was no longer at the police station, and the detectives did not know where he was now.

{30} The trial court did not find this to be due diligence, and denied appellant's request to use Detective Adams' testimony from appellant's first jury trial. The trial court

found that Detective Adams was not unavailable and that appellant had not used due diligence to secure his appearance at trial. We do not view the trial court's ruling as to his unavailability to be in error.

{31} The court further denied appellant's request for a continuance of the trial to secure Detective Adams' appearance, and overruled his motion for a mistrial based upon counsel's alleged ineffectiveness in failing to subpoena Detective Adams.

{32} Ordinarily a reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite* (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921. If, however, the denial of a continuance is directly linked to the deprivation of a specific constitutional right, some courts analyze the denial in terms of whether there has been a denial of due process. *Bennett v. Scroggy* (6th Cir. 1986), 793 F.2d 772. A defendant has an absolute right to prepare an adequate defense under the Sixth Amendment of the United States Constitution and a right to due process under the Fifth and Fourteenth Amendments. *United States v. Crossley* (6th Cir. 2000), 224 F.3d 847, 854. The United States Supreme Court has recognized that the right to offer the testimony of witnesses and compel their attendance is constitutionally protected. *Washington v. Texas* (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019. The Ohio Supreme Court recognized that the right to present a witness to establish a defense is a fundamental element of due process of law. *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 4-5, 511 N.E.2d 1138. A trial court's failure to grant a continuance to enable a defendant to exercise his constitutionally protected right to offer the testimony of witnesses and compel their attendance may, in some circumstances, constitute a denial of due process. *Mackey v. Dutton* (6th Cir.

2000), 217 F.3d 399, 408; *Bennett v. Scroggy*, supra, 793 F.2d at 774. See also, *State v. Wheat*, Licking App. No. 2003-CA-00057, 2004-Ohio-2088 at ¶ 16.

{33} Among the factors to be considered by the court in determining whether the continuance was properly denied are: (1) the length of the requested delay, (2) whether other continuances had been requested and granted, (3) the convenience or inconvenience to the parties, witnesses, counsel and court, (4) whether the delay was for legitimate reasons or whether it was "dilatory, purposeful or contrived", (5) whether the defendant contributed to the circumstances giving rise to the request, (6) whether denying the continuance will result in an identifiable prejudice to the defendant's case, and (7) the complexity of the case. *Powell v. Collins* (6th Cir. 2003), 332 F.3d 376, 396; *State v. Unger* (1981), 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078, 1080; *State v. Wheat*, supra at ¶ 17.

{34} In *Wheat*, supra, the appellant argued that the trial court erred when it failed to continue his trial to secure witnesses he had subpoenaed. This Court found no abuse of discretion because the request for a continuance did not demonstrate the amount of time necessary to secure the attendance of the witnesses, or the nature of their testimony. 2004-Ohio-2088 at ¶ 21. Citing *State v. Brooks* (1989), 44 Ohio St.3d 185, 542 N.E.2d 636, we held that because defense counsel failed to proffer what the desired testimony of the absent witnesses would have been and how it was relevant to the defense, we could not find prejudice from the denial of the motion to continue. Id. at ¶ 22-24, 542 N.E.2d 636.

{35} "When the reason for a continuance is to secure the attendance of a witness, 'it is incumbent upon the moving party to show that such witnesses would have

given substantial favorable evidence and that they were available and willing to testify.'" *State v. Komadina*, 9th Dist. No. 02CA008104, 2003-Ohio-1800, ¶ 32, quoting *State v. Mills*, 5th Dist. No. 01-COA-01444, 2002-Ohio-5556. Because appellant's counsel did not make a timely proffer of any anticipated testimony, the trial court could not have known how or why said testimony was vital to appellant's defense when it denied the continuance. *State v. Snowden* (1976), 49 Ohio App.2d 7, 17, 359 N.E.2d 87 (not an abuse of discretion to deny continuance due to absence of purportedly "critical defense witness" where no proffer made of witness' anticipated testimony at the time of decision).

{36} In the case at bar, appellant did not proffer the former testimony of Detective Adams into the record before the trial court. We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v. Flesher* (1967), 12 Ohio St. 2d 107, 233 N.E. 2d 137; *State v. Stanton* (1968), 15 Ohio St.2d 215, 217, 239 N.E.2d 92,94; *Wachovia Mtg. Corp. v Aleshire*, Licking App. No. 09 CA 4, 2009-Ohio-5097 at ¶16. See, also, App.R. 12(D). Given that the former testimony of Detective Adams was not proffered to the trial court and made a part of the record on this appeal, we do not have anything by way of evidence by which to demonstrate that appellant was prejudiced by the failure to present Detective Adams' testimony during his second trial.

**{37}** The evidence was uncomplicated and straightforward. Appellant has not demonstrated prejudice from the court's denial of his motion to continue, and the court did not abuse its discretion in overruling the motion.

**{38}** Appellant further argues that the trial court should have granted a mistrial.

**{39}** The granting of a mistrial rests within the sound discretion of the trial court as it is in the best position to determine whether the situation at hand warrants such action. *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900; *State v. Jones* (1996) 115 Ohio App.3d 204, 207, 684 N.E.2d 1304, 1306.

**{40}** "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497. The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9; *State v. Treesh* (2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749, 771. When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross abuse of discretion. *State v. Draughn* (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793-794, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728; *State v. Gardner* (1998), 127 Ohio App.3d 538, 540-541, 713 N.E.2d 473, 475.

**{41}** In evaluating whether the trial judge acted properly in declaring a mistrial, the court has been reluctant to formulate precise, inflexible standards. Rather, the court has deferred to the trial court's exercise of discretion in light of all the surrounding circumstances:

**{42}** " * * * We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. * * * But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." *United States v. Perez* (1824), 22 U.S. (9 Wheat. 579, 580) 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165. See, also, *United States v. Clark (C.A.* 2, 1979), 613 F.2d 391, certiorari denied 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (a second prosecution is not barred on double jeopardy grounds when the trial judge had no reasonable alternative to ordering a mistrial in the first trial); *State v. Widner* (1981), 68 Ohio St.2d 188, 190, 429 N.E.2d 1065, 1066-1067.

**{43}** In *Illinois v. Somerville* (1973), 410 U.S. 458, 464, 93 S.Ct. 1066, 35 L.Ed.2d 425, the Supreme Court further refined the circumstances under which a trial court can order a mistrial:

**{44}** "A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. If an error would make reversal on appeal a certainty, it would not serve 'the ends of

public justice' to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court."

{45} We do not know from the record before what Detective Adams' testimony would have been or why appellant sought to have it admitted during his trial. We cannot presume prejudice from a silent record. *State v. Reddrick*, Montgomery App. No. CA 9710, 1987 WL 14536, *4 (June 22, 1987).

{46} Accordingly, under these circumstances, the trial court did not abuse its discretion in overruling the mistrial motion.

{47} Appellant's Second Assignment of Error is overruled.

III.

{48} In his Third Assignment of Error, appellant argues that he was denied effective assistance of trial counsel. We disagree.

{49} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{50} In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and

*Bradley. Knowles v. Mirzayance* (2009), --- U.S. ----, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251.

**{51}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

**{52}** "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{53}** In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{54}** Appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland,* 466 U. S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

**{55}** Appellant contends that his trial counsel was ineffective because he failed to subpoena Detective Adams.

**{56}** Counsel's decision regarding the calling of witnesses is within the purview of trial strategy, and the failure to subpoena witnesses for trial does not violate counsel's duty to defendant absent a showing of prejudice. *State v. Coulter* (1992), 75 Ohio App.3d 219, 230, 598 N.E.2d 1324; *State v. Hunt* (1984), 20 Ohio App.3d 310, 312, 486 N.E.2d 108. Accordingly, courts have traditionally been reluctant to find ineffective

assistance of counsel in those cases where an attorney fails to call a particular witness. See *State v. Otte* (1996), 74 Ohio St.3d 555, 565-66, 660 N.E.2d 711; *State v. Williams* (1996), 74 Ohio St.3d 456, 659 N.E.2d 1254.

{57} In the case at bar, defense counsel failed to proffer to the trial court what the desired testimony of Detective Adams was and how it would have been relevant and material to the defense. Evid.R. 103(A)(2) requires an offer of proof in order to preserve any error in excluding evidence, unless the excluded evidence is apparent in the record. Given that the former testimony of Detective Adams was not proffered to the trial court and made a part of the record on this appeal, we do not have anything by way of evidence by which to demonstrate that appellant was prejudiced by the failure to present Detective Adams' testimony during his second trial.

{58} Appellant has failed to demonstrate that there exists a reasonable probability that, had trial counsel subpoenaed Detective Adams the result of his case would have been different.

{59} Appellant's Third Assignment of Error is overruled.

**{60}** For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. PATRICIA A. DELANEY

[Cite as *State v. Alexander*, 2011-Ohio-6784.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
            Plaintiff-Appellee         :
                                       :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
WILLIAM L. ALEXANDER                   :
                                       :
                                       :
            Defendant-Appellant        :        CASE NO. 2011-CA-00096


        For the reasons stated in our accompanying Memorandum-Opinion, the

judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.   Costs to

appellant.



                                       _____
                                       HON. W. SCOTT GWIN


                                       _____
                                       HON. SHEILA G. FARMER


                                       _____
                                       HON. PATRICIA A. DELANEY